THE COMMERCIAL BANK OF ALBANY v. GEORGE W. STRONG.

*Sufficiency of proof. Bills of exchange ; notice of dishonor.*

A decision of the county court, as to the sufficiency of certain proof, *held*, to refer to its character, or quality and competency, and not merely to its quantity or force in convincing the mind.

A notice of the dishonor of a bill of exchange, or promissory note, should be addressed to an endorser at the place of his residence, unless he is shown to have a place of private business elsewhere. The office of a corporation, of which he is an officer, (in this case the president,) in a town different from that in which he resides, will not, in the absence of proof, be regarded as his private business place; and a notice addressed to him there will not be sufficient.

That a notice to an endorser was seasonably deposited in the post office, need not be proved by a single witness. If more persons than one participated in the act, the testimony of all of them should be adduced.

Consideration of the probability as to the manner in which the notice in the present case was directed and sent to the defendant; and of the testimony, in reference to its legal sufficiency, to prove that the notice addressed to the defendant as endorser, was put into the post-office, seasonably to charge him.

ASSUMPSIT against the defendant as an endorser of a bill of exchange, drawn by the Rutland & Washington Railroad Company, by George W. Strong, president, upon, and accepted by the treasurer of that company, dated at the office of the R. & W. R. Co., West Poultney, and made payable to the order of Eastman & Page, at the American Exchange Bank, New York, endorsed by Eastman & Page, John Bradley, George W. Strong, J. W. Baldwin, and M. Clark. Plea, the general issue ; trial by the court, September Term, 1855,—PIERPOINT, J., presiding.

The drawing, acceptance, endorsements, presentment, non-pay-

ment and protest of the bill were duly proved. The testimony tending to prove notice to the defendant of the non-payment and protest was as follows :

The notary, by whom the bill was protested, deposed that he enclosed to the cashier of the plaintiffs a notice, in due form, to the defendant as endorser. Attached to his deposition were three notices, produced and exhibited to him by the defendant, which the notary testified were filled up in his hand-writing, but he could not testify further as to their identity. One of these notices was addressed, on the inside, to " George W. Strong," and purported to be a notice to him as endorser, and was directed on the outside to " George W. Strong, Esq., West Poultney, Vt."; another was addressed, on the inside, to " George W. Strong, Pres't. Rut. & Wash. R. Co.," and purported to be a notice to him as drawer, and had the word " Rutland" on the lower right hand corner, in writing different from that of the notary ; and the other was addressed on the inside to " Geo. W. Strong, Esq., Pres't &c., and to Geo. W. Strong," and purported to be a notice to him, both as drawer and endorser, and was post-marked with the New York City post-office stamp, and was directed on the outside to " Geo. W. Strong, Esq., Pres't, and Geo. W. Strong, West Poultney, Vt."

William D. Case testified, that during the month of June, 1854, he was a clerk in the Commercial Bank of Albany ; that it was his special duty to make a record, in a book kept for that purpose, of the notices of protests of the non-payment &c., of notes, bills of exchange, &c., received at the bank, and to send said notices to the different persons, whose paper had been protested ; that in the forenoon of the 20th of June, 1854, said bank received by mail, from the city of New York, a notice of the protest for non-payment of the bill of exchange or draft in question, and that enclosed with said notice, were four notices in all respects like it, addressed to George W. Strong, Merritt Clark, James W. Baldwin, and John Bradley ; that on the 20th of June, 1854, in the forenoon, and immediately after the receipt by said bank, of said notice of said protest, he enclosed one of said four notices of protest, which was addressed to George W. Strong, in an envelope, which was addressed by him to " George W. Strong, Rutland, Vermont," whose place of residence was communicated to him by the cashier of said

bank, on his inquiry for the residence of said Strong, at the time of
addressing said letter ; that after enclosing said notice in the enve-
lope addressed to said Strong, he laid it on his desk, to be taken
and deposited in the post-office in Albany, and afterwards, on ·that
day, the letter was gone from his desk ; that it was the daily
and special duty of Edwin W. Belden, the youngest clerk, to take
all letters from the bank to the post-office, and in his absence it was
the duty of James P. White, the next oldest clerk, and in the
absence of both, he, said Case, took the letters ; that it was his
daily and uniform practice to place all his letters, including those
enclosing notices of protest, on his desk ; that each clerk had his
separate desk, and no person, excepting the officers of said bank,
could have access to them ; that he did not know the residence of
said Strong, at the time of enclosing said notice to him, but was
informed and directed by the cashier so to direct, and he did so
direct it ; that the word " Rutland," at the lower right hand corner
of the notice, addressed to George W. Strong, Pres't of the Rut.
& Wash. R. Co., attached to the deposition of the notary, was
made by, and in his (the said Case's) handwriting.

Edwin W. Belden deposed, that on, prior and subsequent to the
20th of June, 1854, he was a clerk in the Commercial Bank of
Albany, and that if he took a letter from the desk of William D.
Case, on the said 20th of June, 1854, or at any other time, for the
purpose of depositing the same in the post-office, at Albany, he did
so deposit the same, on the same day on which it was taken for
deposit in said office ; that it was his duty to take the letters from
the said bank to the post-office, and he usually did so, during the
month of June, 1854 ; that he generally took the letters from the
bank to the post-office, and had frequently taken letters from the
desk of Case, and deposited them in the post-office at Albany ; and
on his cross-examination he deposed, that he had no recollection
of ever taking, or putting into the post-office, a letter addressed to
the defendant.

James P. White deposed to substantially the same, in effect, with
Belden—·that if he took such a letter from the desk of Case, to
deposit in the post-office, he did so deposit it on the same day, &c.

The foregoing was all the testimony upon this point, except that
it appeared that the residence of the defendant was in Rutland,

and that the office of the Rutland & Washington Railroad Company was in West Poultney.

The court found the facts proved as stated in the foregoing testimony of the witnesses, but upon that evidence they decided that there was not sufficient proof of notice to the defendant, to charge him as endorser, and rendered judgment in favor of the defendant.

Exceptions by the plaintiffs.

*B. F. Langdon* and *E. N. Briggs* for the plaintiffs.

Due notice by the plaintiffs to the defendant is proved by the depositions of the notary, Belden and White, and by the testimony of Case, and by the fact that these notices were in the possession of the defendant.

As a general rule, direct testimony is required, but the court will receive any testimony tending to prove the delivery of the letter, containing the notice, to the post-office, in due time.

The facts are before the court, and their sufficiency to prove the notice is a question of law. 4 Camp. 192, *Hetherington* v. *Kemp.* Chitty on Bills (1842 ed.) 658, and 659 note *x.* ch. 5 p. 2. Byles on Bills 219. 3 Camp. 379, *Hagedon* v. *Reed.* 5 Johns. 375–378, *Miller* v. *Hackley*, note *a.*

*C. L. Williams* and *L. C. Kellogg* for the defendant.

Notice to the defendant as endorser should be proved by positive evidence, and not left to inference. Chitty on Bills, 511 and notes 643, 646. *Hawkes* v. *Salter,* 15 C. L. R. 125. *Toosey* v. *Williams,* 25 C. L. R. 269. *Bank of Vergennes* v. *Cameron,* 7 Barb. 143,

The only decision made by the county court, was that there was not sufficient proof of notice. This was a question of fact, and therefore is not revisable in this court. 1 Green. Ev. 61, § 2.

The opinion of the court was delivered by

REDFIELD, CH. J. This is an action upon a bill or draft against the defendant, as endorser. The only question made in the case is in regard to the proof of notice of dishonor to the defendant. The case being tried in the court below, without the intervention of the jury, some question has been made upon the bill

of exceptions, whether any question of the sufficiency of the evidence of notice, is properly before this court. But as the testimony is detailed very much at length, and the court say they " found the facts proved, as stated in the testimony of the witnesses," and also that, upon the foregoing evidence, which is certified to be all the evidence given upon this point, they decided that " there was not sufficient proof of notice to the defendant, to charge him as endorser," we can only conclude that they did refer to the character and competency of the proof, and not to the quantity; to the quality, rather than the amount and force of the evidence in convincing the mind.

We must, then, see what was the character of the evidence given.

I. We do not think there is any doubt, as to the particular notices sent, either from New York, where the bill was made payable, and where it was protested, or from Albany, where the bill seems first to have been negotiated. It is obvious that the notice, having the New York City post-mark upon it, and which is addressed to the defendant in the double capacity of president of the Rutland & Washington Railroad, on whose behalf he drew the bill, and also as endorser, in his private and personal capacity, was sent by the notary protesting the bill, direct from New York to West Poultney, where the railroad office seems to have been kept. But as the defendant, at the time, had his residence in Rutland, we do not regard a notice addressed to him at West Poultney, sufficient to charge him as endorser, there being nothing to show that he had any private business place at West Poultney. No case of that character has been shown to us, and the general course of decision is, certainly, that notice to an endorser must be sent to the place of his residence, unless he is shown to have his place of business elsewhere. There may be cases where one has different places of business, that notice addressed to either, is sufficient. But although the defendant is not shown here to have any particular place of business in Rutland, distinct from his dwelling, yet, as he had no place of private business out of Rutland, his dwelling was his place of business, to which notice should be addressed to charge him as endorser.

II. We think it is obvious, that the notary having sent this

double notice direct from New York, would not have probably sent another addressed to the defendant, at the same place, as endorser only. The strong probability is, that he sent two distinct notices to Albany for the defendant, one as drawer, on behalf of the rail-road, and the other as endorser only. These being put into each other, and the outside one addressed, upon the back, West Poult-ney, Case, the teller, doubtless took them to the cashier, in the manner he testifies, and learning the residence of the de-fendant, marked it upon the inside one, which happens to be the one addressed to the defendant as president, &c. But, most un-doubtedly both were sent to Rutland by Case; in the manner testi-fied, as there is no other reasonable mode of accounting for their being in the possession of the defendant, or, indeed, of their being made by the notary, in addition to the double one already sent. The teller, indeed, calls it one notice, and it was so, in some sense, being to one person, but in two quite different capacities. The teller might not have recollected precisely the facts, but it must have been so, to account for his own memorandum upon one of these notices, and also his entry of the notice sent to the defendant, as endorser, upon the notice sent to the Commercial Bank, and pro-duced upon the trial, with the memorandum of the notice sent to Strong, as endorser.

III. The question is reduced, then, to the narrow point, whether there was sufficient evidence that the notice to the defendant, as endorser, which Case testifies he enclosed in an envelope, and ad-dressed to the defendant at Rutland, and which the county court finds to be true, and which there is no reason to question, and which he also says he laid upon his desk, and which was afterwards, on the same day, gone from the desk, was really shown to have been deposited in the post-office at Albany, in season for the mail of the next day. As it was gone from the desk the same day, the only question would seem to be, whether the proof is sufficient to show that it went from the desk directly into the post-office. For if so, that will charge the defendant, although the notice never reached him. After that the conveyance is at his own risk. And if it did not go direct to the post-office, there is no certainty how long it might have been delayed, or indeed whether it ever reached the defendant, except that he had it in possession many months after,

22

The cases are undoubtedly very strict upon this point, as they should be, in requiring very great certainty of proof of depositing the notice in the post-office. But the cases, certainly, do not require that this should be proved by a single witness, who can swear positively, that he deposited the notice in the proper place. This, in practice, in large commercial cities, where the vast majority of such cases arise, would seem not generally to be the course of doing such things. The depositing of such letters in the post-office, as of other notices, is, perhaps, more generally done, in such places, by porters and messengers. But it would seem to be the rule, that all who had anything to do about the matter of depositing the notice, should be called. Is this shown to have been done in the present case?

It would seem from the testimony, that this bank had a cashier and three clerks to transact the business. There is nothing to indicate that any other persons had anything to do with sending notices of dishonor of bills and notes generally, or in this case in particular. From the fact that Case was upon the stand, and that the uncertainty of this notice was made a leading point in the trial, we may fairly presume, perhaps, that if there had been others, having probable connection with the transaction, whose testimony was not taken by the plaintiffs, which would very much tend to increase the uncertainty, we should have been apprised of that fact.

From the testimony of Case, it seems, that it was the special duty of Case, the first clerk, to make out and deposit in the post-office, or see that it was done, all such notices. The cashier does not seem to have had any connection with this notice, or to have been expected, ordinarily, to have anything to do with such notices, except probably, to give directions when applied to by Case, as in the present case. It was the daily and special duty of Belden, the youngest clerk, to take all letters from the bank to the post-office, and in his absence the same duty devolved upon White, the next older clerk, and in the absence of both, the duty devolved upon Case. None but the officers of the bank had access to Case's desk. The letter was deposited in the proper place for them to take to the post-office, or where they often took them. They both testify, that at this date, it was their business, in the manner and order

stated by Case, to carry letters from the bank to the post-office, and that they often took letters from Case's desk for that purpose, and that if they took any letter on that day, or any other, they carried it to the post-office the same day. There is no pretence of any motive, in any officer of the bank, to detain the letter, or that they would be liable to do so by mistake, or indeed that any others but those named, had access, at the time, to the desk of Case, although, it is probable, the directors must have had. But the probability of their carrying off such a letter, by design or mistake, is quite too remote to be taken into the account. It is, perhaps, quite as prob= able that one of the clerks might have lost it upon the way to the post-office, without being aware of the loss, and really suppose he delivered it at the post-office, and 'that is not. a contingency which is ever taken into the account of uncertainties in such cases.

We may say here, then, safely, that all the persons having any connection with the business of depositing the letters of this bank, at that time, in the post-office, or who would be likely, upon any rational conjecture, either by design or mistake, to take such letter from the desk, have testified explicitly that if they did take it up from the desk, they deposited it in the post-office the same day. In addition to this, the notice is found to have reached the defendant at some time. And we have before said, if the letter had been dropped by mistake, or purloined, it would, in all rational probability, never have reached its destination. Can there be, then, any longer any reasonable doubt of the deposit of this letter in the post-office, the same day it was written? We think not. The evidence rises to a sufficient degree of certainty to answer any de= mand, even in a criminal court, if it be of the proper quality.

The authorities relied upon to show this was not the case do not seem to us to establish any such proposition.

The proposition in Mr. Chitty's treatise upon bills, that it is incumbent upon the holder "to prove distinctly, and by positive evidence, that due notice was given, and that it cannot be left to inference or presumption," seems to be based altogether upon the case of *Lawson* v. *Sherwood*, 1 Stark. 314, a mere *nisi prius* deci= sion. The language of the author seems to be taken from the case. But the case seems to justify no such rule of proof, as to cases generally of this kind. The witness there testified that he

gave notice in either two or three days, three days not being in time, which is no testimony at all of the fact of legal notice. It leaves the probabilities precisely equal, whether notice was given or not, which is precisely no proof at all. Any one who knew nothing about the case, might safely testify that he either did give notice, or did not, which is this case as reported.

And the next proposition of the same author is equally unsupported by the cases referred to. It is that, " the party who puts a letter, giving notice of the dishonor of a bill, into the post office, must be able to swear to a certainty, and not doubtfully, that he put the letter in himself, and not that he was doubtful whether he did not deliver it to another clerk to put it in." The case referred to is *Hawkes* v. *Salter*, 4 Bing. 715. The difficulty here was, that the witness could not swear whether *he* put the letter in the post office, or another clerk did it, and the testimony of the other clerk was not taken in the case; so that, there was, in fact, no testimony to connect the letter with the office. And the case of *Toosey* v. *Williams*, 1 Moody & Malkin 128, although more in point for the defendant, as it seems to me, than any other cited, is by LORD TENTERDEN put upon the ground that, after the letter was copied by the clerk, it had to go into the defendants' hands to be sealed, and there was nothing in the case to show that he ever returned it to the clerk whose business it was to convey it to the post office, and who testified very much as the two younger clerks do here. But here the letter is shown, to a moral certainty, to have been taken by the clerks, and they testify, if they took it, they deposited it in the post office the same day. The case of the *Bank of Vergennes* v. *Cameron*, 7 Barbour 143, a note of which was read to us, seems to be a case where there was no proof of notice, except the notice being in the endorser's hands after the time for giving it had expired. It could not, from that, be inferred, of course, that it was given in time. But, in the present case, it is shown that if the notice was ever deposited in the office, it was done in time, and the notice being in the defendant's hands, is strong confirmation of the notice having reached the office in due time.

On the other hand, the reasoning of Lord Ellenborough, in *Hetherington* v. *Kemp*, 4 Camp. 193, whose opinions are always regarded as good evidence of the law, shows very fully that the

evidence in the present case ought to be regarded as sufficient. "Had you called the porter," says his lordship, "and he had said that, although he had no recollection of the letter in question, he invariably carried to the post office all the letters found upon the table, this might have done." "A letter was then put in from the defendant," acknowledging the receipt of a letter of the proper date from the plaintiff, and Lord Ellenborough said he would *presume* this was the letter written to inform him of the dishonor of the bill, although nothing was said of that in the defendant's letter.

The case of *Miller* v. *Hackley*, 5 John. 374, is a case where far more uncertain evidence than the present was held sufficient.

In this last case, the witness, being the notary who protested the bill, only testified that it was his usual course to send notices by mail, deposited on the evening of the same day of protest, and that he believed he did so in the present case, and it was held sufficient. We think there is no question the proof in the present case should have been held competent to prove notice to the defendant of the dishonor.

Judgment reversed and case remanded.