## Marshall *v.* Sonneman, Appellant.

*Promissory notes—Protest—Notice.*

In order that an indorser of a promissory note may be made liable for its payment after the note has been dishonored, notice of the nonpayment must come from the holder himself, or some one who was a party, and the notice must assert that the holder intends to stand on his legal right, and to resort to the indorser for payment. Mere knowledge of the nonpayment on the part of the indorser is not sufficient to charge him with liability.

A notice of protest signed by a notary public, and personally delivered by him to the indorser is not sufficient to charge the latter, where it appears that the notice was addressed to another person than the indorser, and stated that the holder looked to such person for the payment of the note.

Argued May 14, 1906. Appeal, No. 150, Jan. T., 1906, by defendant, from judgment of C. P. York Co., Jan. T., 1905, No. 27, on verdict for plaintiff in case of L. A. Marshall v. August Sonneman. Before FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

Assumpsit on a promissory note. Before BITTENGER, P. J.

At the trial it appeared that the note in suit was as follows:

"$4000                     YORK, PA., Nov. 2, 1903

"One hundred twenty    days after date I promise to pay to the order of A. Sonneman      at        L. A. Marshall & Co., Bankers,                    York, Penna.
Four thousand           Dollars without defalcation for value received, waiving the benefit of the Exemption and Stay laws.
"No.                  Post Office
"Due March 29, Feb. 29      24099      M. FINK
            Mar. 1.
                      "Endorsers.  A. SONNEMAN
                           "L. A. MARSHALL."

Other facts appear by the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $2,756.14. Defendant appealed.

*Error assigned* amongst others was (2) in rejecting the notice of the protest offered in evidence by the defendant.

*Henry C. Niles*, with him *George E. Neff*, for appellant.—
Mere knowledge of nonpayment is not sufficient notice to hold
the indorser : First Nat. Bank of Lancaster v. Shreiner, 110
Pa. 188 ; Remer v. Downer, 23 Wendell, 620 ; Etting v. Schuyl-
kill Bank, 2 Pa. 355 ; Paine v. Edsell, 19 Pa. 178. ·

The certificate of the notary may be contradicted : Stewart
v. Allison, 6 S. & R. 324.

*John A. Hoober*, with him *James G. Glessner* and *Allen C.
Wiest*, for appellee.—The notice contains a most precise descrip-
tion of the note, a statement that payment was demanded and
refused and that the note was protested for nonpayment.   It
is entitled in large letters " notice of protest."   The description
of the note is so full that it cannot be read without at once
having attention directed to the note in suit and being in-
formed that it was dishonored.   It is therefore entirely within
the requirements of the negotiable instruments law : Tobey v.
Lennig, 14 Pa. 483 ; Stephenson v. Dickson, 24 Pa. 148 ; Natl.
Bank of Stewartstown v. Day, 15 York Leg. Rec. 21.

To relieve Sonneman he must have proven not only that he
received no notice of the protest, but also that no notice was
given or due diligence used to apprise him of the default of
the maker : Tradesmen's Bank of Vineland v. Tillyer, 12 Pa.
C. C. Rep. 452 ; Braneher v. Beltz, 2 Leg. Rec. 394 ; McGee
v. Northumberland Bank, 5 Watts, 32.

OPINION BY MR. JUSTICE MESTREZAT, June 27, 1906 :

This is an action by an indorsee against an indorser to re-
cover the balance due on a promissory note.   One of the de-
fenses interposed at the trial was an alleged failure to give the
defendant notice of the dishonor of the note.   The plaintiff
proved the execution of the note by the maker and introduced
testimony to show that the defendant had indorsed it.   A no-
tary public was then called and he testified that he had pro-
tested the note at maturity for nonpayment and that on the
same day he had delivered notices of protest personally to both
the plaintiff and the defendant, who were the indorsers.   He
said he gave but one notice to the defendant.   The certificate
of protest was offered in evidence, by which it appears that
the note was protested on the day it became due and that

the notary had notified the indorsers " by notices of protest personally delivered to " the plaintiff and defendant.   A copy of the notice was not produced at the trial by the plaintiff.

The defendant denied that he had received notice of the dishonor of the note.   He testified that the notary delivered to him an envelope addressed to L. A. Marshall, the plaintiff, which contained the following notice:

" Notice of Protest.
" YORK, PA., March 1, 1904.
" L. A. MARSHALL.

" Please take notice that the note of M. Fink for four thousand dollars in favor of A. Sonaman dated York, Pa. Nov. 2, 1903, payable March 1, at L. A. Marshall & Co., Bankers, York, Penna. and by you endorsed, (being due this day, payment having been demanded and refused,) is protested for non-payment, and that the holders look to you for the payment thereof.

" Respectfully yours,
" HENRY K. KRABER,
" Notary Public."

The defendant further testified that the notary gave him no other notice, paper or envelope.   He then offered in evidence the notice which, on objection by the plaintiff, the trial judge excluded, stating the reason for his ruling as follows: " I think there is sufficient notice there to hold him under the law. If this was addressed through the post office it would not be evidence, because he would not have received it; but it was delivered to him at his place of business and he could not help but have notice.   We do not think it shows want of notice, but on the other hand it shows sufficient notice although it was improperly addressed."   This is the subject of the second assignment of error.

The correctness of the ruling of the learned court depends upon the sufficiency of this notice.   If it was sufficient notice to the defendant of the dishonor of the note, he was not injured by the exclusion of the offer.   He admits he received the notice from the notary on the day the note was protested. If, however, the notice was insufficient to charge the defendant

with liability on the note, it was error to exclude the offer. In that view it became a question for the jury to determine under the evidence whether legal notice of dishonor had been given, and as bearing on that question, it is apparent that this notice was competent evidence. The notary testified that he delivered only one notice to the defendant, but he denied that the notice excluded was the one he gave the defendant. The defendant testified that he received but one notice from the plaintiff, and that the paper in question was that notice. It is true that the certificate of protest showed that a notice had been delivered to the defendant, but that was only prima facia evidence of the fact and the party could contradict it by other evidence. It was therefore a question of fact for the jury what, if any, notice of protest was given the defendant; and if they had found that the only notice given him was the paper produced by him on the trial it would have been the duty of the court to determine the legal effect of the paper, and if that had been against its sufficiency as a notice, the verdict should have been for the defendant. The controlling question in the case, therefore, was the sufficiency of the notice.

If the holder of negotiable paper desires to charge antecedent parties with its payment it is incumbent on him to give them notice of its dishonor. He may notify either or all of the prior indorsers, but he can compel payment only from those who have received notice of the maker's default. The notice may be either written or verbal, or it may be partly written and partly verbal. "All that is necessary," says the learned author of Byles on Bills, *276, "is to apprise the party liable of the dishonor of the bill in question, and to intimate that he is expected to pay it. And an announcement of the dishonor will (at least if it come from the holder) amount to a sufficient intimation to the indorser that he is liable." It is sufficient if under all the circumstances the language of the notice imports that the indorser is looked to for payment, and it would seem not unfair to imply such intention from the very fact of sending notice of dishonor: 7 Cyclopedia of Law and Procedure, 1109. The weight of authority is that a notice of dishonor is sufficient to charge an indorser if it comes from the holder or his agent and notifies the indorser that the

note was presented and payment was refused.　Notice of non-payment, however, is not sufficient; nor is mere knowledge of protest all that is required to charge the indorser.　Says the author above quoted (p. 276) : " Notice does not mean mere knowledge, but an actual notification.　For a man who can be clearly shown to have known beforehand that the bill would be dishonored is, nevertheless, entitled to notice."　In Tindal v. Brown, 1 Term Rep. 167, ASHHURST, J., says : " Notice means something more than knowledge, because it is competent to the holder to give credit to the maker.　It is not enough to say that the maker does not intend to pay, but that the holder does not intend to give credit to such maker : the party ought to know whether the holder intends to give credit to the maker or to resort to him."　And in the same case BULLER, J., observes : " The notice ought to purport that the holder looks to the party for payment, and a notice from another party cannot be sufficient; it must come from the holder."　This case and many other English authorities are cited on the subject in the opinion of this court in Juniata Bank v. Hale, 16 S. & R. 157, where it is said (p. 160) : " That knowledge of nonpayment is not notice, is very clear; for the notice must come from the holder himself, or someone who is a party; for the notice must assert that the holder intends to stand on his legal rights, and to resort to the indorser for payment; and, therefore, where the drawer had notice before the bill was due that the acceptor had failed, and gave another person money to pay the bill, and the holder neglected to give notice of its dishonor, it was held that the drawer was discharged."

We are of opinion that the written notice which the defendant alleges was delivered to him was not sufficient to charge him with the dishonor of the note.　It was in proper form, signed by a notary, and was delivered in due time.　But on its face, it clearly discloses the fact that it was not intended for the defendant.　It was directed to L. A. Marshall, the plaintiff, and the envelope containing it bore the same address. Marshall, like the defendant, was also an indorser of the note, and if the holder intended to impose liability on him it was necessary that he should have notice of dishonor.　It is therefore apparent that this notice was intended for Marshall and was, of course, for the purpose of apprising him of the dishonor

of the note and was prepared by the notary with that intention. The notary does not testify that at the time he delivered the envelope containing the notice he told the defendant what it contained or said anything to him concerning its contents. He did not apprise the defendant that the note had been dishonored or that the notice was intended for him. He gave the defendant no verbal notice whatever, and hence all the information the latter had of the dishonor of the note and the intention of the holder to guard his rights and to avoid responsibility by fixing liability on antecedent parties was what was contained in the envelope addressed to Marshall. This, as we have observed, was a notice to Marshall that the note "by you indorsed" was protested for nonpayment, "and that the holders look to you for the payment thereof." Why should the defendant accept this as a notice of dishonor to him and take care of the note? There is no intimation in the paper that the holder intended to look to him for payment. On the contrary, the notice is that the holder will look to Marshall, his immediate prior indorser, for payment. This he had a legal right to do, and was not compelled to notify the defendant or any other indorser or to demand payment of him. If Marshall desired to hold the defendant responsible as a prior indorser, it was incumbent upon him to give the latter notice of dishonor. The defendant was justified in treating the paper delivered to him by the notary as a notice to Marshall, as the address on the envelope and notice disclosed, and that the purpose was to notify Marshall of dishonor for the purpose of charging him with payment of the note. If either the envelope or the notice had been addressed to the defendant, or if neither had been addressed to him, the plaintiff's contention that the notice was for the defendant would have some ground for its support. If, when he delivered the paper, the notary had notified the defendant verbally that the note had been dishonored or that the written notice was for him, there would be sufficient to charge the defendant with notice of dishonor. But none of these facts can be found in the case. Assuming that the defendant opened the envelope and read its contents, he simply obtained the knowledge that the note was dishonored and that the holder would look to Marshall, the last indorser, for payment. This, as we have seen, is not sufficient under the

cases to fix the defendant, as an indorser, for the payment of the note.

For the reasons above stated, the second assignment of error is sustained, and the judgment is reversed with a venire facias de novo.