## McIntosh, Appellant, *v.* Ropp.

*Estoppel—Oil lease—Tenant by the curtesy—Joint action.*

Where a tenant by the curtesy executes an oil lease without the remainder-men, a son and two daughters, joining in the lease, and subsequently the three remainder-men bring a joint action of trespass against the lessee to recover damages for the taking of oil, and there is sufficient evidence to constitute an estoppel against the son, although no evidence of estoppel against the daughters, a joint recovery is defeated, and a verdict and judgment for the defendant will be sustained.

In such a case there is sufficient evidence to constitute an estoppel against the son, where it appears that he had urged the taking of the lease in the first instance from his father, had encouraged the expenditure of money by the lessees in developing the lease, had worked on the lease at different times for several years, and had received checks made payable to his own order for a number of years for the royalty due under the lease for oil run into the pipe line in the name of his father.

Argued Oct. 14, 1908.. Appeal, No. 59, Oct. T., 1908, by plaintiffs, from judgment of C. P. Butler Co., Sept. T., 1907, No. 94, on verdict for defendant in case of Edward E. McIntosh and Addie McIntosh v. W. H. Ropp. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Trespass to recover damages for the taking of oil. Before GALBREATH, P. J.

The facts are stated in the opinion of the Supreme Court.

Plaintiff presented the following points:

11. If Edward E. McIntosh did make any declarations as to being pleased or satisfied that Dierken and Whitener had taken an assignment of the wells and intended fitting them up and pumping them, or any declarations to this effect, without knowledge of his rights, he would not be estopped, as one of the essential elements in estoppel is the knowledge of his own rights in the subject-matter by him who is to be estopped. *Answer:* This is refused, if Edward McIntosh encouraged Dierken and Whitener to purchase the lease. Otherwise, it is affirmed, and in that connection I may say to you what I

probably neglected to say in the general charge, that Edward McIntosh says that he has no recollection of having said those things which it is alleged he said before or at the time when Dierken and Whitener were contemplating the purchase of these wells. [27]

12. If one cotenant or joint tenant by his acts, words or conduct is estopped, it will not affect or destroy the title of the other cotenants or joint tenants if they were not present and had no part in misleading the injured party, and there has been no evidence shown in this case which would estop Addie McIntosh and Elizabeth Mary Lee. *Answer:* The acts, words or conduct of one cotenant will not affect or destroy the title of the other cotenant or cotenants who were not present and had no part in misleading the injured party, and unless Addie McIntosh and Elizabeth Mary Lee, with a full knowledge of their rights, stood by in silence and saw the defendant, in a mistaken belief that he had good title, make his expenditures, they are not estopped. [28]

Elizabeth Mary Lee and her husband having joined in a deed of conveyance of her undivided one-third interest in the McIntosh farm to the plaintiffs on April 7, 1900, which deed is recorded April 13, 1900, in Butler county in deed book No. 186, page 180, the plaintiffs must recover in this case for the damage done the shares of Addie and Elizabeth. *Answer:* That is answered in the same way as the preceding point, which I will read as the answer to this point. The acts, words or conduct of one cotenant will not affect or destroy the title of the other cotenant or cotenants who were not present and had no part in misleading the injured party, and unless Addie McIntosh and Elizabeth Mary Lee, with a full knowledge of their rights, stood by in silence and saw the defendant, in a mistaken belief that he had good title, make his expenditures, they are not estopped. [29]

14. If Edward E. McIntosh did work on the wells after the purchase by Dierken for a week or more, and did haul an auger stem or other machinery to a shop for a contractor and did furnish the coal to generate steam for the wells, from the beginning up to 1905 without the knowledge of his rights, these

facts do not estop him and are not evidence of estoppel. *An-swer:* Without knowledge of his own right the facts set out in this point would not work an estoppel, unless he thereby encouraged future investment or expenditure, in which case, he would be estopped to complain of any injury done after such encouragement had been given and expenditure made. [30]

17. The fact that Edward McIntosh carried his father's receipts and selling orders to the pipe line office and received checks for them and paid money over to his father is no element of estoppel, especially as Daniel Dierken had no knowledge of that fact until the summer of 1907 and about the time this suit was brought. *Answer:* That is affirmed, with the qualifications that the jury may consider the fact of the sale of the oil by Edward McIntosh as a circumstance in the case, in its relation to the other evidence in the case, and the light, if any, which it throws upon the whole conduct of Edward McIntosh. The fact, however, in itself is not sufficient to predicate an estoppel upon it. [33]

Defendant presented these points:

2. While the title to the McIntosh farm is in Kenneth McIntosh for life as tenant by the curtesy, and then will vest in the plaintiffs, and while Kenneth McIntosh had no right to lease it for oil purposes without the consent of his children, yet the plaintiffs may be precluded by their conduct from asserting their title to the prejudice of the defendant; and if the jury find that before purchasing the wells from Sybert and before paying the purchase money therefor, and before expending money in the development thereof, Dierken and Whitener were positively encouraged by Edward E. McIntosh to purchase or to expend money upon the wells, and he did not disclose the true state of the title, Dierken and Whitener being ignorant of it, there can be no recovery in this case, although Edward E. McIntosh may have been ignorant of his right. *Answer:* That is affirmed. [34]

3. If the jury find that the plaintiffs knew that B. B. Sybert, or Dierken and Whitener under him, were expending money upon faith of a lease made by their father, knowing their rights in the land, their silence or failure to inform Sybert, or

Dierken and Whitener, of their claim, will now estop them from denying the rights of the defendant under the Sybert lease, and the burden of proof is upon the plaintiffs to show that they were ignorant of their rights at the time they should have given information of their claims. *Answer:* This is affirmed, with the qualifications, that in order to the plaintiffs' estoppel, it should appear, in addition to the things set out in this point, that the defendant was making his expenditures without the same knowledge possessed at the time by the plaintiffs as to the rights of the parties respectively. [35]

4. Although Kenneth McIntosh could not make a lease of the McIntosh farm without the consent of his children, the plaintiffs, yet the fact that Edward E. McIntosh, since the year 1900, has been receiving most of the oil royalties derived from the Sybert lease is evidence of a ratification of the lease by estoppel. This is true also if the plaintiffs, or either of them, allowed their father, without objection, to use the royalties for their joint benefit. And if the jury so find, and also find that the plaintiffs knew their rights, the jury may find ratification by estoppel and a verdict based thereon in favor of defendant. *Answer:* The facts set out in this point are not sufficient, in themselves, to work an estoppel, but may be considered in their relation to the other testimony bearing on the question of estoppel. [36]

Verdict and judgment for defendant. Plaintiffs appealed.

*Errors assigned* among others were (27–30, 33, 34–36) above instructions, quoting them.

*John M. Greer*, with him *Thomas H. Greer* and *John B. Greer*, for appellant.—Under the undisputed facts the lessees could have had no mistaken opinion about their rights under the lease, before they began operations on it; but, on the contrary, knew exactly what they had acquired from the tenant by the curtesy. The doctrine of estoppel is not in this case; if the real truth was known to both, and their means of knowledge was equal, there is no estoppel: Brandmeier v. Pond Creek Coal Co., 219 Pa. 19; Knouff v. Thompson, 16 Pa. 357; Woods v. Wilson, 37 Pa. 379; Bright v. Allan, 203 Pa. 394; Hill v. Epley,

31 Pa. 331; Goundie v. Northampton Water Co., 7 Pa. 233; Boggs v. Mining Co., 14 Cal. 279; Williamson v. Jones, 38 L. R. A. 694.

*T. C. Campbell*, with him *P. W. Lowry, F. J. Forquer, W. Z. Murrin* and *John Murrin*, for appellees.—The evidence was sufficient to establish estoppel: Livengood v. Stauffer, 31 Pa. Superior Ct. 495; Hill v. Epley, 31 Pa. 331; Chapman v. Chapman, 59 Pa. 214; Goundie v. Water Co., 7 Pa. 233; Knouff v. Thompson, 16 Pa. 357; Beaupland v. McKean, 28 Pa. 124.

A joint action in tort cannot be maintained when some of the plaintiffs are shown to have no right to recovery: McDonald v. Simcox, 98 Pa. 619.

OPINION BY MR. JUSTICE ELKIN, January 4, 1909:

The title to the tract of land which produced the oil, the subject-matter of the present controversy, was vested in Rosa McIntosh, mother of plaintiffs, at the time of her death. She died intestate in 1888, leaving to survive her a husband and three children. The husband went into possession of the farm as tenant by the curtesy, while the son and one daughter, appellants here, made their home with their father and continued to reside upon the premises as they had done in the lifetime of their mother. In 1895 Kenneth McIntosh, the father and life tenant, executed a lease for oil and gas products upon twenty acres of said tract to all intents and purposes as if he were the owner thereof. The original lessee, or his assigns, proceeded to drill and develop the tract for the production of oil. According to the terms of the lease one-eighth part of all the crude oil produced was set apart in the pipe line, running the same to the credit and for the benefit of the lessor. The lessee therefore contends that, having acted in good faith in the development of said property, and having paid the royalty agreed to be paid the lessor whom he believed to have the authority to execute said lease, he ought not to be required to again pay for the oil taken or damages done the premises, under the facts of the present case. The appellee took an assignment of the lease from Dierken in July, 1907, and this suit was instituted

to recover damages from the time he took possession of and operated the wells under the lease. The defense relied on in the court below was that of an equitable estoppel, and this doctrine was very carefully explained by the learned trial judge in the charge to the jury. As to Edward McIntosh, we have concluded that there was sufficient testimony to justify a finding that he had urged the taking of the lease in the first instance from his father, had encouraged the expenditure of money by the lessees in developing the lease, had worked on the lease at different times for several years, and had received checks made payable to his own order from October 26, 1900, to November 27, 1907, for the royalty due under the lease for oil run into the pipe line in the name of his father; and all of these things, if believed, are sufficient in law to constitute an estoppel. The verdict of the jury leaves no room for doubt that this view of the facts prevailed. This being a joint action, there must be a joint recovery. If Edward McIntosh is estopped, the right to a joint recovery is defeated, and the action as at present instituted must fall. What has been said as to Edward must not be understood as applicable to his sisters. As to the married sister who lived in the state of New York, nothing was proven to show that during the time she had an interest as remainder-man in the farm as an heir of her mother, anything was done by her either by way of acquiescence or encouragement to estop her from asserting her legal rights. Those who subsequently took her title stand in the same position in respect to her interest as she would have done if the title remained in her, unless since the acquisition of her interest, those who took it did something which in contemplation of law would amount to an estoppel as to them, and this cannot be determined from the present record. As to the sister Addie, one of the appellants here, who remained at home on the farm, we are of opinion that the facts established at the trial are not sufficient to constitute an estoppel as to her. However, the present action cannot prevail, because it being joint, and there being sufficient facts established to estop Edward, the right to a joint recovery being thus defeated, this action must fall.

Judgment affirmed.