Harr, Secretary of Banking, Appellant, *v.* Edsall.

Argued December 11, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Harry Norman Ball,* with him *Ralph J. Rinalducci, Michael C. Goglia, Gerald F. Flood* and *Charles J. Margiotti,* Attorney General, for appellant.

*Raymond deS. Shryock,* with him *Federico F. Mauck,* for appellee.

OPINION BY PARKER, J., January 31, 1936:

The Secretary of Banking of this Commonwealth, acting as receiver of the Bank of Philadelphia and Trust Company, brought this action in assumpsit to recover a balance due on a negotiable instrument from William A. Edsall, the defendant, an endorser. The sole question involved on this appeal concerns the sufficiency of an attempted notice of dishonor to the defendant. The case was tried before a jury and the trial judge submitted to the jury two questions: Was the office of the Individual Family Laundry the place of business of the defendant? Did the endorser know that the note when due was not paid? They were instructed that if they found either of these facts in favor of the plaintiff, then he was entitled to a verdict. The jury found for the plaintiff and the court entered judgment n. o. v. for the defendant.

The note in suit was given by Individual Family Laundry, dated November 21, 1930, payable in thirty days, was executed by Harry C. Kulp, president, and endorsed by William A. Edsall and Heywood M. Wiley as individuals. It is conceded that the note was a negotiable instrument and that the Bank of Philadelphia and Trust Company became a purchaser for value before maturity and in due course. On December 22, 1930, the note, by its terms, became due and payable, was presented for payment at the place specified in the note, payment was refused, and on the same date the note was protested. The notary in the official protest certified: "Of which demand and refusal I duly notify

the maker, Individual Family Laundry, Harry C. Kulp, Pres., and the endorsers, Harry C. Kulp, William A. Edsall, and Heywood M. Wiley." It will be observed that the notice did not state that he had sent a notice directed to Edsall to any particular address or, in fact, that he had notified any of the endorsers. However, on trial it was stipulated between the parties as follows: "It is agreed that the notary public in protesting the note in suit sent notice of the protest to the defendant, William A. Edsall, by addressing a communication to him at the place of business of the defendant company, No. 2528 West Dauphin Street, Philadelphia, that the notary received an acknowledgment of the notice which acknowledgment was signed by one Kulp who was the president of the maker of the note." It is conceded that 2528 West Dauphin Street was the place of business of the Individual Family Laundry.

The defendant testified that he lived at Haverford, Pa., and had lived there continuously for twelve years; that he had his place of business in the Atlantic Refining Company Building, 260 South Broad Street, where it had been maintained for eight years; that he was not active in the Individual Family Laundry; that while he had the title of vice-president and secretary, his sole duties were to countersign checks, and that he did not go to the office of the company for that purpose; and that he received no notice of the dishonor until he was advised by the receiver in 1933, by a letter addressed to his home at Haverford.

By Section 89 of the Negotiable Instruments Law of May 16, 1901, P. L. 194, (56 PS 211), except as otherwise provided therein, when a negotiable instrument has been dishonored by nonpayment, "notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged." Mere knowledge of nonpayment is not notice: First Nat. Bank v. Shreiner, 110 Pa. 188, 195,

20 A. 718; Marshall v. Sonneman, 216 Pa. 65, 64 A. 874. The notice may be in writing or merely oral. "It may in all cases be given by delivering it personally or through the mails": Section 96 (56 PS 218). "Where notice of dishonor is duly addressed and deposited in the postoffice, the sender is deemed to have given due notice, notwithstanding any miscarriage in the mails": Section 105 (56 PS 227). In this respect the law was changed from what it had theretofore been: Zollner v. Moffitt, 222 Pa. 644, 651, 72 A. 285.

By Section 108 (56 PS 230), where a party has added an address to his signature, notice of dishonor must be sent to that address, but if he has not given such address then the notice of dishonor must be sent as follows: "1. Either to the post-office nearest to his place of residence or to the post-office where he is accustomed to receive his letters; or, 2. If he live in one place and have his place of business in another, notice may be sent to either place; or, 3. If he is sojourning in another place, notice may be sent to the place where he is sojourning."

By Act of December 14, 1854, P. L. [1855] 724, §2 (28 PS 222), the official acts, protests, and attestations of all notaries public, certified according to law under their respective hands and seals, in respect to the dishonor of bills and promissory notes and of notice to the drawers, "may be received and read in evidence as proof of the facts therein stated ...... Provided, That any party may be permitted to contradict, by other evidence, any such certificate." Also, see Act of January 2, 1815, 6 Sm. L. 238 (28 PS 221).

Now it will be observed that the notary public did not certify that he had notified the endorsers but said that he did by the official protest notify them. Consequently we do not have the benefit of the presumption (Scott v. Brown, 240 Pa. 328, 87 A. 431) that would otherwise arise from his official act. In addition, there

is the admission of the parties that the notice which was sent was directed to the office of Individual Family Laundry. Since the statute provides that the notice may be sent to the post office nearest to his place of residence or the post office where he is accustomed to receive his letters, such notice is ordinarily sufficient. If, however, a wrong address has been given and the failure to receive notice is shown, the official act is without validity: Marwitz's Estate, 286 Pa. 191, 196, 133 A. 220. As was pointed out by President Judge Rice in the case of Siegel v. Hirsch, 26 Pa. Superior Ct. 398, it may be conceded that the notice would have been sufficient if it had been addressed to the defendant at Philadelphia without more, and that the holder is not bound to ascertain the street and number where the endorser's place of business or residence is located, for if the endorser desires the notice to be delivered by a carrier at a particular place the statute provides a mode whereby he may require that to be done, and if he does not do so the holder is warranted in inferring that notice mailed to the post office nearest to his residence or where he is accustomed to receive his letters will be sufficient. However, nothing must be added by the sender of the notice to the address which will lead a carrier to deliver the notice to a wrong address. It follows that if this notice is to be sustained as sufficient it must be by virtue of the portion of Section 108 which provides that notice may be given at the endorser's place of business. This leads us to the real question in controversy. Was the fact that a notice of dishonor was addressed to the defendant and delivered at the place of business of Individual Family Laundry, of which defendant was vice-president and secretary, standing by itself sufficient to sustain a finding of the jury that notice was mailed to his place of business?

"It is always the duty of the owner of a note to use reasonable diligence to discover the true residence, so

that proper information can be given, if the one secondarily liable is to be held ...... The holder of a note is bound by the information which he has, or should have obtained, and cannot excuse his default by reason of the ignorance of the notary who actually protests": Marwitz's Estate, supra (p. 195). In fact, Section 112 of the statute (56 PS 235) provides that notice of dishonor is dispensed with "when, after the exercise of reasonable diligence, it cannot be given to or does not reach the parties to be charged." To entitle a holder of a negotiable instrument to recover from an endorser secondarily liable, he has the burden of showing that the instrument was due, was duly presented to the maker, and that he refused to pay, of which the defendant had notice, for "these are necessary conditions or ingredients of an endorser's absolute liability" and such facts must be pleaded: Chestnut St. Nat. Bank v. Ellis, 161 Pa. 241, 28 A. 1082.

To sustain the verdict and judgment appellant depends alone on the fact that the notary sent a notice addressed to the defendant at the address of the Individual Family Laundry, of which defendant was vice-president and secretary, and this in the face of the uncontradicted testimony of defendant that his place of business was at a different location, the Atlantic Refining Company Building on Broad Street (a fact capable of ready contradiction if not true), and his further testimony that such business as he transacted for the laundry company was not performed at the office of that concern.

We are of the opinion that the phrase "his place of business" as used in this statute does not comprehend every place a person may transact any business or a place which he may occasionally visit to transact business. It connotes more and refers to a place where he carries on a business in which he is personally engaged as a merchant, tradesman, professional man, or similar

trade or calling. It certainly is not broad enough to comprehend any place in which the party may be interested or any place where he may transact an individual or isolated act of business or trade. "That is not properly a place of business in the commercial understanding of the terms, which has no public notoriety as such, no open or public business carried on at it by the party, but only occasional employment by him there, two or three times a week": Bank of Columbia v. Lawrence, 26 U. S. 578, 582. In Stephenson v. Primrose, 8 Porter 155 (Ala.), 33 Amer. Dec. 281, it was said: "And a place of business must be understood to be a place actually occupied, either continually or at regular periods, by a person or his clerks, or those in his employment. If business is transacted there sometimes, but at no stated periods, the occupant, his clerks, etc., can not be supposed to be there at any other time to receive notice of the dishonor of paper." It is a place where he maintains headquarters or a center from which his activities radiate and a place to which he returns when he has performed an isolated or particular item of business. For example, one conducting a plumbing business usually performs a large part of his actual labor at the residence, factory, or building of his customer, but surely each of these places would not be "his place of business." We do not mean to intimate that one may not have two places of business.

The expression, "his place of business," used here is the same as we find in various acts of assembly with relation to service of summons in civil actions, particularly Act of July 9, 1901, P. L. 614 (12 PS 291). One would not maintain that a writ of summons could be properly served by leaving it at the office of a corporation of which the defendant was a vice-president or director, where he was not carrying on an occupation on his own account and where he was not actively engaged. In the case of Kinney v. Stoer, 14 D. R. 131,

this question arose and Judge MOSCHZISKER, afterwards Chief Justice MOSCHZISKER, there said: "The principal question argued was as to whether or not an individual can be legally served by substituted service, under the Act of 1901, by leaving the writ with a person in charge, at the office or place of business of a corporation with which such defendant may be connected in some official capacity, or as an employee, but which office is not otherwise his individual and personal place of business. As before said, we construe the words used in the Act of Assembly, 'at his place of business' ...... to mean the personal and individual place of business of the defendant, in which he has some kind of a proprietary interest and not merely his place of occupation or employment ...... Not only would it be most unsafe to hold otherwise, but we must believe that it was not the legislative intent to permit substituted service to be made at a man's place of employment or occupation upon a person clothed with no authority by him and owing no duty individually to him." The force of this expression becomes manifest when we consider that in this case the proofs show that the notice was left with the president of the laundry company who apparently felt under no obligation to communicate the notice to the defendant.

The case of Commercial Bank of Albany v. Strong, 28 Vt. 316, 67 Amer. Dec. 714, is directly in point. It was held there that a notice of dishonor attempted to be given to an endorser was not effective where it was left at the office of a railroad of which the endorser was president. Also, see In re: Marindelbaum, 141 N. Y. S. 319.

We therefore hold that the fact that one is vice-president and secretary of a corporation is not of itself sufficient to make the office of the corporation the place of business of such officer, as that expression is used in the Negotiable Instruments Law. The burden of proof

was on the plaintiff to show the giving of notice as required by that act and, owing to the form of the protest, no presumption arose as to the giving of the notice. The record being entirely devoid of any facts from which it can be inferred that the notice was actually received by the defendant, it follows that the plaintiff's case must fail.

Judgment affirmed.