## James Doak, Jr., Co. *v.* Levy, Appellant.

582

Argued March 2, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER, JAMES and RHODES, JJ.

*R. L. Levy,* with him *J. Julius Levy,* for appellant.

*H. W. Mumford,* of *Welles, Mumford, Stark & Mc-
Grath,* with him *Don Reifsnyder,* for appellee.

Opinion by Rhodes, J., April 19, 1937:

The principal question to be determined on this appeal is whether there is evidence from which the jury could properly find that defendant waived notice of dishonor of note on which he was an endorser.

The court below submitted the case to the jury, which found for the plaintiff. Defendant's motions for new trial and judgment n. o. v. were dismissed, and this appeal by defendant has followed.

On February 23, 1934, the Scranton Knitting Mills, Inc., gave a promissory note payable nine months after date to the order of Hahn-Simmons Co. in the amount of $1,000. The note was executed on behalf of the company by appellant as treasurer, and endorsed by him individually. The plaintiff became the owner of the note in due course. The note was payable at the Third National Bank and Trust Company of Scranton, and it was there presented for payment at the time of maturity, and payment was refused. There was testimony that on November 19, 1934, payment of the note had been stopped at the direction of appellant. The note was duly protested on November 23, 1934. The defense was based upon the claim that notice of protest was never sent to appellant or received by him.

All notes and checks of the maker were signed by the appellant as treasurer. At the time payment of the note in question was stopped, there were sufficient funds in the account of the maker corporation to pay the note. Between November 13, 1934, and November 19, 1934, there was withdrawn from the bank account of the corporation approximately $6,000 to pay obligations to the firm of which appellant was a partner, or on which he was endorser or guarantor for the corporation.

Under the facts of the case, whether the notice of dishonor was waived by appellant was a question of fact to be submitted to and determined by the jury. See *First National Bank of Granville v. Delone,* 312 Pa. 391,

584

167 A. 286; *First National Bank of Tamaqua v. Tamaqua Mfg. Co.,* 71 Pa. Superior Ct. 39.

The certificate of the notary was to the effect that he protested the note, payment having been stopped, and "notified the maker and endorsers." It appears, however, that he sent the notices of protest to the last endorser thereon, which was the Ninth Bank and Trust Company of Philadelphia, Pa., because he did not have the addresses of the other endorsers, including appellant. He instructed the trust company to forward notices to the other endorsers. See section 107 of the Negotiable Instruments Law of May 16, 1901, P. L. 194 (56 PS § 229).

Appellant's chief contention is that the case was submitted to the jury by the trial judge on the theory that knowledge by appellant, the endorser, that the note was not paid at maturity dispenses with necessity of notice of its dishonor. Section 89 of the Negotiable Instruments Law of May 16, 1901, P. L. 194 (56 PS § 211), provides: "Except as herein otherwise provided, when a negotiable instrument has been dishonored by non-acceptance or non-payment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged." However, section 109 (56 PS § 232) provides that: "Notice of dishonor may be waived, either before the time of giving notice has arrived or after the omission to give due notice, and the waiver may be expressed or implied."

It is the rule that mere knowledge of nonpayment is not sufficient to charge an endorser with liability. *Harr, Secretary of Banking, v. Edsall,* 121 Pa. Superior Ct. 19, 183 A. 67; *First National Bank of Lancaster v. Shreiner et al.,* 110 Pa. 188, 20 A. 718; *Marshall v. Sonneman,* 216 Pa. 65, 64 A. 874; *Zollner v. Moffitt,* 222 Pa. 644, 652, 72 A. 285.

The charge of the court was, in effect, that in the ab-

sence of notice, as alleged by appellant, he would still be liable if he had ordered payment of the note to be stopped and knew that the note would not be paid at maturity; but that the facts in the case were to be determined by the jury from the testimony. The charge may be subject to criticism as to its extent, but it set forth no erroneous theory and contained no fundamental or basic error. The case involves, and the charge of the court so states, much more than mere knowledge of nonpayment. The note in question could not have been executed without appellant's signature, as all notes and checks of the maker corporation were signed by him. He had control of the corporate funds, and had knowledge of the corporation's financial condition. He knew when and where notes were due and payable as he alone had executed them as treasurer of the maker corporation. On November 19, 1934, he stopped payment of the note held by plaintiff, which had been made by him as treasurer of the maker corporation and endorsed by him individually. This note was to have matured on November 23, 1934. Of course he knew that this note containing his endorsement would not be paid on its due date, but he is chargeable with more than knowledge. He had made payment impossible; nonpayment was at his direction. His position is comparable to that of a drawer of a negotiable instrument, who has countermanded payment. See section 114 of the Negotiable Instruments Law (56 PS § 237). Notice of dishonor in either case is not required.

Where an endorser is the same person to whom the instrument is presented for payment, notice of dishonor is not required to be given to such endorser (section 115 of the Negotiable Instruments Law [56 PS § 238]); so, where an endorser stops payment of a note, he cannot be heard to complain that he has received no notice of dishonor. Why should he receive notice of that which he knowingly and intentionally has produced? He was not

entitled to notice by his own conduct; when he stopped payment of the note which he had endorsed he thereby waived notice of its dishonor.

Under the circumstances, notice of nonpayment was not necessary for his protection (*Alldred's Estate (No. 1)*, 229 Pa. 627, 79 A. 141), and it is not conceivable that notice to him could have served any useful purpose (*Barclay v. Weaver,* 19 Pa. 396). Notice to appellant that payment of the note held by plaintiff had been refused, when such refusal to pay on presentation was at his direction, would have been a vain and useless thing. This the law does not require. Cf. *Arlotte et al. v. National Liberty Ins. Co.,* 312 Pa. 442, 167 A. 295.

Waiver of notice may be shown under an averment of notice (*Pennock v. West,* 52 Pa. Superior Ct. 138); and there is no merit in appellant's contention that plaintiff failed to establish a prima facie case. The authorities upon which appellant relies in this connection are not applicable.

Appellant complains of a portion of the charge of the court, which is assigned as error. No specific exception was taken to this portion of the charge which is now alleged to be error. Appellant took only a general exception at the conclusion of the charge and after the trial judge asked whether he had misstated the testimony in any way. No request for additional instructions was made; nor did counsel for appellant call the court's attention to any omission or defect in the charge or any misstatement of the testimony by the court. " 'A party may not sit silent and take his chances of a verdict, and then if it is adverse complain of a matter which if an error would have been immediately rectified and made harmless': *Com. v. Razmus,* 210 Pa. 609, 611 [60 A. 264, 265]; *Reznor Mfg. Co. v. Bessemer & Lake Erie R. R. Co.,* 233 Pa. 369, 372 [82 A. 473]. The general rule is that failure to except particularly to the trial judge's omission to give further instructions on any branch of

the case precludes raising the question subsequently upon a general exception: *Dravo Contracting Co. v. James Rees & Sons*, 291 Pa. 387, 393 [140 A. 148]; *Liacopoulos v. Coumoulis*, 298 Pa. 329, 336 [148 A. 474]": *Tropical Paint & Oil Co. v. Sharon Building Co.*, 313 Pa. 51, at pages 52, 53, 169 A. 105.

We are of the opinion that plaintiff's evidence, if believed by the jury, was sufficient to establish waiver of notice of dishonor and to warrant the jury in finding for plaintiff.

Assignments of error are overruled.

Judgment is affirmed.