Marinoff et al. *v.* Belmont Burlap Bag Company, Inc., et al., Appellants.

Argued October 30, 1941.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld and Rhodes, JJ.

*Maurice A. Granatoor,* for appellants.

*Edwin Fischer,* for appellees.

OPINION BY BALDRIGE, J., February 28, 1942:

The principal question raised in this appeal is whether Marinoff and Eskin, the plaintiffs, as holders in due course of three trade acceptances, averred and proved notice of dishonor to defendants, Belmont Burlap Bag Co., Inc., Abraham Mackler, and Samuel Mackler, as indorsers, within the time prescribed by section 103 of the Negotiable Instruments Law approved May 16, 1901, P. L. 194, 56 PS 225.

A trial without a jury was had before TUMOLILLO, J., who found for the plaintiffs. A motion for a new trial and judgment n.o.v. was thereafter refused and judgment was entered on the finding. This appeal followed.

The three acceptances in suit were drawn February 2, 1938, by Samuel Friedman Bag Company, through its agent Samuel Friedman, on the Old Dominion Bag Co., Inc. of Norfolk, Virginia, payable to the drawer. The first, in the sum of $475.15, was due March 31, 1938; the second, in the sum of $1003.51, was due April 30, 1938; and the third, in the sum of $363.21, was due and payable May 31, 1938. On the back of each trade acceptance appears the following indorsements:

> "A. Mackler
> Samuel Mackler
> The Belmont Burlap Bag Co.
> A. Mackler, Pres.
> Samuel Mackler, Secty.
> Samuel Friedman Bag Co.

Samuel Friedman
Without Recourse
Marinoff and Eskin
Nathan Marinoff
(Marinoff & Eskin)
Marinoff & Eskin"

Each bill was presented on the due date to the drawee at Norfolk, Virginia, payment was refused, and they were protested before a notary public. In paragraphs 10(a), 10(b), and 10(c), of the amended statement of claim, offered in evidence as undenied in the affidavit of defense, the plaintiffs averred that they, as holders of these trade acceptances, deposited in the U. S. mails in Philadelphia three letters properly addressed to defendants' place of business in Philadelphia, each containing a notice of dishonor. The dates of the respective trade acceptances and the letters mailed are as follows: The first trade acceptance, due March 31, 1938, letter mailed April 6, 1938; the second trade acceptance, due April 30, 1938, letter mailed May 5, 1938; and the last trade acceptance, due May 31, 1938, letter mailed June 7, 1938.

Under section 89 of the Negotiable Instruments Law, supra, 56 PS 211, when a negotiable instrument has been dishonored, notice must be given to each indorser, otherwise the indorser, who is only secondarily liable, is discharged. The burden rests upon the holder of the instrument to prove the essential prerequisites of due presentation to the maker, demand of payment at the proper time and place, and notice of dishonor, unless waived, before a recovery can be had against an indorser: *Harr, Secy. v. Edsall,* 121 Pa. Superior Ct. 19, 21, 183 A. 67; *Chestnut Street National Bank v. Ellis,* 161 Pa. 241, 244, 28 A. 1082; *Bell, Secy. v. Anderson et al.,* 143 Pa. Superior Ct. 56, 60, 17 A. 2d 647. If there is no dispute over the facts, whether proper diligence had been exercised in giving notice to an indorser

of a negotiable paper is a question of law for the court: *Marwitz's Estate,* 286 Pa. 191, 198, 133 A. 220.

In the instant case the plaintiffs, as holders, and defendants, as indorsers, were both Philadelphia parties. Section 103 of the Negotiable Instruments Law, supra, 56 PS 225, the controlling section, provides in such circumstances that notice, if sent by mail, "must be deposited in the post-office in time to reach him in usual course on the following day."

In *West Virginia Coal Co. v. Gano,* 112 Pa. Superior Ct. 158, 170 A. 416, the note was dishonored November 18, 1929, its due date. Plaintiff's statement showed that notice of dishonor was not mailed by it in Richmond, Virginia, to defendant indorser in Philadelphia until November 20, 1929. We held that was one day too late, and therefore the plaintiff's statement was insufficient as a matter of law, as section 104 of the Negotiable Instruments Law, supra, 56 PS 226, requires sending of notice the day following the day of dishonor, where parties live in different cities. The judgment entered on a demurrer for the defendant was affirmed by this court.

It is apparent that according to the statement of claim the notices, mailed 5, 6, or 7 days after the date of dishonor, were not sent within the statutory period. If the plaintiffs' case had depended entirely upon the statement of claim, we would have to hold that they failed to set forth a good cause of action. It appeared at the trial, however, both by the testimony of the plaintiffs and by certain notices printed as exhibits in the record, that the plaintiffs sent these trade acceptances in suit to their bank, the Pennsylvania Company for Insurance on Lives and Granting Annuities. If plaintiffs can prove that the Pennsylvania Company acted as their agent for collection, and it in turn forwarded the drafts to Norfolk prior to their due date, they may come within the provisions of section 94 of the Uniform Negotiable Instruments Law, supra, 56 PS 216, which reads:

"Where the instrument has been dishonored in the hands of an agent, he may either himself give notice to the parties liable thereon or he may give notice to his principal. If he gives notice to his principal, he must do so within the same time as if he were the holder, and the principal upon the receipt of such notice [has] himself the same time for giving notice as if the agent had been an independent holder."

These plaintiffs, however, must go further and show that the delay was due in part at least, to some of the days intervening between dishonor and the giving of notice being Sundays or holidays, and that section 194 of the Negotiable Instruments Law, supra, 56 PS 495, or the Act of May 31, 1893, P. L. 188, as amended, 44 PS 11, which name certain holidays and state their effect on the requirements of notice of dishonor, apply.

In view of the evidence produced at trial we feel that the plaintiffs should be given an opportunity to amend their statement if the actual facts will show that notice of dishonor was given in compliance with the requirements of the Negotiable Instruments Law.

Appellants claimed also that they were discharged as indorsers because the indorsement of Friedman without recourse operated as a discharge of the drawer, Samuel Friedman Bag Company, under section 120 of the Negotiable Instruments Law, supra, 56 PS 272, which provides that a discharging of a prior party discharges those secondarily liable. This contention is without merit. See *Packard v. Woodruff*, 57 Pa. Superior Ct. 176.

The judgment of the court below is reversed and the rule for a new trial reinstated.