# First National Bank of Hanover *v.* Delone, Appellant.

*Promissory notes—Liability of endorser—Notice of dishonor—*
*Protest—Mail notice—Act of May 16, 1901, P. L. 194—Defenses—*
*Extension of time—Discharge—Trials—Practice, C. P.—After-dis-*
*covered evidence—New trials—Act of May 14, 1874, P. L. 157.*

1. Under Section 105 of the Negotiable Instruments Act of May·
16, 1901, P. L. 194, providing that "where notice of dishonor is duly
addressed and deposited in the post office, the sender is deemed to
have given due notice, notwithstanding any miscarriage in the
mails," due notice is deemed to have been given when the notice is
properly addressed and deposited in the mails whether it has been
received or not.

2. The certificate of a notary public, made admissible in evidence
by the Act of December·14, 1854, P. L. (1855), 724, for the purpose
of showing his "official act, protests and attestations," in relation
to the dishonor of bills and notes and notice thereof to endorsers, is
prima facie evidence of the allegations set forth in it, and if there
is nothing in contradiction it is conclusive of what it contains.

3. Where in an action against the endorser of a promissory note
a notary public produced his certificate at the trial showing demand
and refusal, and notice thereof to defendant, and in addition testi-
fied that he had given notice to the defendant by letter duly
stamped and addressed and mailed at a certain time and place, the
court properly refused defendant's offer to show that he personally
had not received the notice.

4. In such case there was no merit in defendant's contention that
the court erred in charging, in effect, that the notary's statements
must be taken as a verity, where there was no real attempt to im-
peach either the notary's certificate or oral testimony, especially
where the court stated that the credibility of witnesses was for the
jury and no complaint was made by defendant's counsel at the close
of the charge.

5. In such case the court below did not err in refusing a new
trial, moved for on the ground of after-discovered evidence, where

defendant's deposition was that he had recently found in his desk a notice of protest directed to another endorser; that his mail was always opened by a clerk, and that he had no recollection of having seen the notice before, but where the inference that defendant had received a notice meant for another endorser was not certain, and where the trial judge was of the opinion that the alleged evidence could have been discovered by defendant with ordinary care and diligence before the trial.

6. A party may not sit silent and take chances on the verdict, and, if adverse, afterwards complain of language employed in the charge which could have been immediately corrected if attention had been directed to it at the time.

7. The determination of a motion for a new trial is within the sound discretion of the trial court, and, in the absence of clear abuse, will not be disturbed.

8. A notification to proceed against a principal debtor must be accompanied by a positive explicit declaration that unless the request be complied with the surety will be considered discharged.

9. In an action against an endorser of a promissory note where the defense was a discharge by reason of the plaintiff's granting to another endorser, who defendant contended was primarily liable, an extension of time in consideration of a confession of judgment by the other endorser for the amount of the note, a verdict and judgment for the plaintiff will be sustained where plaintiff denied the existence of such contract to extend the time, and where the only evidence supporting defendant's contention was the testimony of a witness who, immediately after stating that such agreement existed, expressed his uncertainty on the point.

10. In such case defendant's offer to show that he had informed the plaintiff of assets belonging to the other endorser and demanded that plaintiff take them by attachment execution on the judgment against the latter was properly refused where there was no offer to prove that there accompanied the demand an explicit declaration that defendant would otherwise hold himself discharged, and where the notice was not in writing as required by the Act of May 14, 1874, P. L. 157, defining the liability of sureties upon written instruments for the payment of money.

Argued May 17, 1916.   Appeal, No. 336, Jan. T., 1915, by defendant, from judgment of C. P. York Co., April T., 1914, No. 106, on verdict for plaintiff in case of the First National Bank of Hanover v. C. J. Delone.   Before BROWN, C. J., MESTREZAT, POTTER, MOSCHZISKER and FRAZER, JJ.   Affirmed.

Assumpsit against endorser on promissory note. Before Ross, J.

The facts appear by the opinion of the Supreme Court.

Verdict for plaintiff for $9,199 and judgment thereon. Defendant appealed.

*Errors assigned,* among others, were various rulings on evidence, the charge of the court, and in refusing defendant's motion for new trial.

*J. S. Black,* with him *V. K. Keesey,* for appellant.

*Michael S. Niles* and *Henry C. Niles,* with them *Charles A. May* and *George E. Neff,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, July 1, 1916:

This was a suit by the holder of a promissory note against an endorser thereon; the verdict favored the plaintiff, judgment was entered accordingly, and the defendant has appealed.

The first assignment of error complains because the trial court refused an offer to show the defendant did not receive notice of the dishonor or protest of the note in suit. The testimony in question was tendered "to affect the credibility of the local notary," who had been called by the plaintiff. When upon the stand, the notary produced his certificate of protest in the usual form; which showed a demand on the proper date, with a refusal of payment, and contained the following statement: "Of which demand and refusal I duly notified the makers, Stine & Gitt......H. N. Gitt......(and) C. J. Delone ......(endorsers)." In addition, the witness testified that he had sent word to the defendant of the dishonor and protest of the note, by enclosing a written notice, a copy of which he produced, in an envelope correctly addressed and stamped, which he personally deposited in a United States mail box at Hanover, at 3:30 o'clock, on

September 3, 1913, the day when the obligation fell due, as indicated by a memorandum made by him at the time.

"Section 105 of the negotiable instruments law (Act of May 16, 1901, P. L. 194) has changed the former rule on this subject by providing that 'where notice of dishonor is duly addressed and deposited in the post office, the sender is deemed to have given due notice, notwithstanding any miscarriage in the mails'; under this section, due notice of dishonor is deemed to have been given when it is shown that the notice is properly addressed and deposited in the post office, whether it has been received or not": Zollner v. Moffitt, 222 Pa. 644, 652. The case just cited also calls attention, at p. 649, to Section 2 of the Act of December 14, 1854, P. L. (of 1855) 724, which provides that "the official acts, protests and attestations of all notaries public, certified according to law, under their respective hands and seals of office, in respect to the dishonor of all bills and promissory notes, and of notice to the drawers, acceptors or endorsers thereof, may be received and read in evidence as proof of the facts therein stated......; Provided, That any party may be permitted to contradict, by other evidence, any such certificate"; we there rule that "this act makes the certificate of a notary prima facie evidence of the allegations set forth in it, and, if there is nothing in contradiction, it is conclusive of what it contains": see also Scott v. Brown, 240 Pa. 328, 331; First Nat. Bk. of Shickshinny v. Tustin, 246 Pa. 151, 155.

In dealing with the phase of the case now before us, the court below states: "The defendant not only did not deny or offer to deny any of the things testified to by plaintiff's witness (the notary public), but only attempted to establish by negative allegations......that he did not receive the notice......If the defendant had offered to prove some direct fact which would have tended to show that the essential requirements of the act of assembly had not been performed, either in the protesting of the note or the giving of notice......, the con-

troverted facts might have been properly left to the jury; but the condition which confronted the court was nothing but a bald proposition to prove that the defendant did not receive the notice. There was no fact offered which tended to show that the notice was not duly received at defendant's place of business, or his residence, or the place where his mail is usually delivered, or that it had not been deposited in a United States mail box, or that the notary or plaintiff had neglected to do anything which the law required them to do, which resulted in the defendant not receiving notice. If the offers had covered any of these elements, they would probably have been admitted." In this excerpt the trial judge sufficiently vindicates his position; he was fully justified in declining to entertain the defendant's restricted offer, although made for the ostensible purpose of impeaching the credibility of the notary, when, under the law, the testimony tendered was not admissible in answer to the evidence produced by that witness. The assignment under consideration is overruled.

The second assignment complains of an excerpt from the charge concerning this question of notice to the defendant. After briefly referring to the facts just stated by us in disposing of the first assignment, the trial judge said: "All these things were legally proved to you, and put in evidence, and are with you for your consideration; now, that constitutes a case for the plaintiff, which the law considers conclusive as against the defendant, unless some intervening legal defense is made which will successfully exonerate the defendant from the payment of the note in question." The appellant contends that this was "tantamount to telling the jury that it must take the statements of Michael (the notary) as verity"; but, when we consider the fact that there was no real attempt to impeach either the notary's certificate or his oral testimony, that the part of the charge in question was restricted to the plaintiff's proofs on the subject of notice to the defendant, that in other parts the trial

judge more than once instructed that the evidence and credibility of the witnesses were for the jury to pass upon, and that, although at the end of his charge the judge was careful to inquire if further instructions were desired, counsel for the defendant said nothing about the alleged faults of which he now complains, it becomes apparent there is no virtue in the present assignment. A party may not sit silent and take chances on the verdict, and, if adverse, afterwards complain of language employed in the charge which could have been immediately corrected if attention had been directed thereto at the time: McCollom v. Pennsylvania Coal Co., 250 Pa. 27, 32; Shade v. Llewellyn, 250 Pa. 456, 461. The assignment is overruled.

The fifth assignment complains because, when after-discovered evidence was offered upon the subject of notice, the court below declined to grant a new trial. The defendant's deposition was to the effect that he had recently found, in one of the drawers of his desk, a notice of protest partially describing the note in suit, which was addressed to H. N. Gitt, the other endorser; that a clerk usually received and opened all the mail which arrived at his office, and that he, the defendant, had no recollection of having previously seen the notice in question. It is contended this testimony was sufficient to justify an inference that, by mistake, the notification intended for the defendant had been sent to Mr. Gitt and the former had received the latter's notice; that is to say, the notices had become confused so that each of the two endorsers received the one intended for the other. If such were the fact, under our recent decision in Marshall v. Sonneman, 216 Pa. 65, it might be sufficient to relieve the appellant from liability; but we do not feel at all convinced the testimony would justify the inference contended for. It is just as possible, since Mr. Gitt claimed that, between them, Mr. Delone was the real debtor, the former transmitted his notice to the latter's office, and, thereby, the appellant received both notifica-

tions.  Moreover, in disposing of this matter, the court below states: "The alleged new evidence could have been discovered by the defendant with ordinary care and diligence; it did not tend to rebut the evidence that due notice was delivered by mail."  The determination of a motion for a new trial is within the sound discretion of the trial court, which, in the absence of a clear abuse, will not be disturbed: Com. v. Filer, 249 Pa. 171, 178; Shade v. Llewellyn, 250 Pa. 456, 462.  Here, since the evidence depended upon was in no sense conclusive and, by due diligence, might sooner have been discovered, we are not convinced of an abuse of discretion; hence, this assignment is overruled.

The remaining three assignments of error concern an alleged contract between the plaintiff and H. N. Gitt, under which, after the maturity of the note, the latter confessed judgment to the former for the amount thereof. The defendant claimed in the court below that, at the time of such confession, it was agreed no execution would be issued against Mr. Gitt until judgment was first secured against the defendant; that the latter, in ignorance of this agreement, told the president and two directors of the plaintiff bank "specifically of property of Gitt's, and asked (them) to proceed upon the judgment which the bank held against H. N. Gitt, principal payor of the note in suit, by attachment, informing the (president) that the property......indicated......was sufficient to pay the note"; that, after discussing the matter, the officials of the bank "concluded they would not proceed by attachment as demanded," because of their agreement with Mr. Gitt, and so informed the defendant.  On this appeal, the defendant contends that the uncontradicted testimony in the case established the agreement in question as a binding contract, that the effect of this was the grant of an extension of time to Mr. Gitt, and that, in view of this extension, the notice to proceed by execution against the latter was sufficient to relieve him, the defendant, from liability.  On the other

hand, the plaintiff contends that the evidence failed to prove a binding contract, and that the notice depended upon was lacking in several material essentials; to which the defendant replies that these alleged essentials, under the facts at bar, should be treated as waived.

Two of the assignments which we are now considering (the third and fourth) complain of rulings on evidence relating to the matters referred to in the last paragraph, and indicate the refusal of certain offers; but the record shows that, while the testimony in relation to the demand and refusal to issue execution against Mr. Gitt was first excluded, yet, subsequently, full opportunity was afforded the defendant to prove the alleged contract for the postponement of such execution. The sixth and last assignment covers an excerpt from the charge; it appears that, after referring to the evidence concerning this so-called contract, the trial judge said to the jury: "You will take these things into consideration, and find out from that evidence—from the preponderance of the evidence—whether or not that contract made at that time between the president and the attorney of the bank and Mr. Gitt amounted to just taking a judgment note and reserving its, the bank's, right to proceed against Delone (the defendant), or whether it amounted, in fact, to an extension of time to Mr. Gitt.......Now, if you find that the latter was the fact, and that......the real intention, or compact,......amounted to a general understanding between all parties that they were to extend the time of payment of this present note as against Gitt, in consideration of his giving the judgment, and that the defendant knew nothing of that at that time, and did not give his assent, then you would be justified in finding a verdict for the defendant; but, if, on the other hand, you find that the result of that contract,...... was nothing more than a promise to Gitt that they would take his judgment, but that they would not release their hold upon Delone, or their right to proceed against Delone, then the contention of the defendant will not pre-

vail, and a verdict for the plaintiff on that branch of the defense would be justified."

In disposing of the questions raised by these three assignments, it is well to have the relevant facts in mind. To start with, the note in suit is dated July 3, 1913, payable two months thereafter to the order of H. N. Gitt, and signed by "Stine & Gitt"; it appears to have been endorsed first by C. J. Delone (the defendant), and then by H. N. Gitt. The testimony on the subject of the alleged agreement was given by Mr. Zouck, the president of the bank, Mr. Neff, counsel for the bank, and Mr. Gitt, himself. The first of these witnesses stated that, when Mr. Gitt confessed judgment, it was "understood" the bank would sue Mr. Delone and get judgment against him before it "issued execution against any of them"; but, immediately after making these statements, Mr. Zouck said it was Mr. Neff, and not he, who acted for the bank at the time of the arrangement with Mr. Gitt; that he did not "exactly know what Mr. Gitt first said" on that occasion, and could not tell what Mr. Neff asked the latter; that, as near as he could remember, in the end Mr. Gitt said, "I will sign, or confess judgment, with a distinct understanding that you sue Mr. Delone and get judgment against him," and that these words expressed all the witness could recollect about the matter. Mr. Neff testified that Mr. Gitt had previously promised to confess judgment to the bank, and that, when they called upon him on the day in question, the witness asked "If he was ready to make good his word," and Mr. Gitt replied, "I am, on one condition......, it must be expressly understood that the bank will sue Delone," to which Mr. Neff replied, "We propose to sue Delone at once, if he does not pay." Mr. Neff further stated that, while Mr. Gitt said Mr. Delone was the real debtor, yet, he admitted "his (own) personal liability" to the bank. Finally, Mr. Gitt gave this version: "Mr. Zouck and Mr. Neff came to my office, and Mr. Neff said, 'Are you going to make your word good?' and I said,

'What do you mean?' and he said......'You said you would give us a judgment,' and I said, 'Yes, I will make my word good upon one condition, and that is, that it shall be distinctly understood that you will bring suit against Delone, and get judgment, if possible; this is his debt, and not mine.' " The witness was then asked what reply was made, but did not give an answer, contenting himself by stating, "I think Mr. Neff had the judgment note and handed it to me and I signed it, and they walked out." Thus, it may be seen that the evidence relied upon to prove a binding contract to postpone execution was far from being conclusive, and the jury found against the existence of any such agreement; but we shall discuss this matter later on, after first disposing of some other relevant points of less importance.

Article VIII, Section 120, of the Act of 1901, supra, paragraph 6, provides that a person secondarily liable on a negotiable instrument is discharged "by any agreement binding upon the holder to extend the time of payment or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved." In connection with the contentions already stated, the appellant claims that the testimony above quoted shows an agreement such as contemplated by this act, that he occupied the position of a person secondarily liable on the note in suit, and that such agreement was without his assent or any "express" reservation of recourse against him. The difficulties with these contentions are manifold. To begin with, there is no testimony to show whether Stine and Gitt, the makers of the note, were a firm, a limited partnership, or a corporation. Next, although Mr. Gitt may have been the Gitt of "Stine & Gitt," yet he was also the payee of the note, and appears thereon as an endorser after Mr. Delone. In other words, the defendant appears on this instrument as an irregular endorser; and counsel for the plaintiff states, without challenge, that, in point

of fact, the note was "endorsed in blank before delivery, by C. J. Delone, the defendant." In this relation, Section 64, Article V, of the Act of 1901, supra, provides that where a person, not otherwise a party, endorses a note in blank before delivery, if the instrument is made payable to the order of a third person, he is liable to the payee and to all subsequent parties; hence, there is a question, on the facts as presented, as to who was secondarily liable, so far as Mr. Delone and Mr. Gitt are concerned. That question need not be decided, however, for the jury determined that no such binding contract as contended for by the appellant existed. Then, again, Mr. Gitt admitted he owed the money called for by the note to the plaintiff bank, and that, before the "understanding" as to not issuing execution against him, he had promised to confess judgment in favor of that institution; therefore, the question suggests itself—under these peculiar circumstances, was there an adequate consideration to support the alleged contract? We may also pass that point, however, for it is quite clear the evidence depended upon was wholly insufficient to justify the trial judge in ruling, as a matter of law, that a binding agreement either "to extend the time of payment or to postpone the holder's right to enforce the instrument" had been shown; on the proofs at bar, the most the defendant could ask on this score was that these issues should be submitted to the jury, which was done.

We say the evidence was insufficient, for Mr. Zouck was the only witness who stated there was any understanding as to postponing execution against Mr. Gitt, and he, immediately thereafter, not only frankly admitted his uncertainty on that point, but, in fact, subsequently confined his testimony to an assertion that all he heard was an offer by Mr. Gitt to confess judgment on the single understanding that judgment should likewise be secured against Mr. Delone. The other two witnesses who were present at the making of the alleged contract said nothing whatever upon the subject of de-

laying execution, although they gave a full account of what took place on that occasion. Under these circumstances, of course, the question as to what did actually occur was for the jury to determine, and they, by their verdict, have found there was no agreement either to postpone execution against or to grant an extension of time to Mr. Gitt. Moreover, even if it were plain that Mr. Gitt was primarily and Mr. Delone only secondarily liable on the note in suit, and the evidence clearly showed an agreement binding upon the holder to postpone its right to enforce payment as against the former, the fact remains that there was uncontradicted testimony sufficient to prove an express reservation of the right of recourse against the defendant; for Mr. Neff testified that, at the time of Mr. Gitt's confession of judgment, he said to him, "We propose to sue Delone at once, if he does not pay." Before leaving this subject, we take occasion to say, while there may be some force in the appellant's contention that, when an agreement to extend the time of payment is made with a person primarily liable, the words of the Act of 1901, supra, require an "express" reservation of recourse against one secondarily liable, yet, when the reasons for this statutory provision are understood, it becomes plain that courts should not be overly particular as to the precise phraseology of such a reservation, so long as it may reasonably be construed as complying with the requirements of the act, which merely announce a well established rule: see Crawford's Annotated Negotiable Instruments Law (Pennsylvania Edition), Notes "d" and "e," on pages 109 and 110; Hagey v. Hill, 75 Pa. 108; Manufacturers' & Mechanics' Bank v. Bank of Pennsylvania, 7 W. & S. 335, 341-2.

The last point which requires consideration concerns the appellant's rejected offer to show that he informed the bank of assets belonging to Mr. Gitt and demanded it take them by attachment execution on the judgment against the latter. This offer was refused by the trial

judge upon the ground that, assuming Mr. Delone to be only secondarily liable, his demand did not comply with the requirements of the Act of May 14, 1874, infra, and our decisions. In this connection, the opinion of the court below states: "It is true the defendant offered to prove certain indefinite conversations which he had with Mr. Zouck, the president of the plaintiff bank, and two of its directors, in which he intimated that he would give information that would lead to the collection of a judgment which the bank held against H. N. Gitt, and demanded that the bank proceed on the judgment, which demand the bank refused to comply with, and, subsequently, that similar offers were made for the express purpose of showing the bank had an opportunity of making the money on the note sued for out of H. N. Gitt, whom the defendant's attorney designated as the 'principal debtor,' and for the further purpose of showing that the bank 'waived its rights to written notice required by the Act of 1874, and had put itself voluntarily in such a position where it could not in any case comply with the demand that was made upon it by the defendant'; which offers the court overruled because the evidence, up to the time the offers were made, did not show the defendant stood in any position in this litigation but as an endorser on the note which was the basis of the suit. He contended that he was an accommodation endorser, and that the judgment against H. N. Gitt had been given without his knowledge or consent; but, even if he had been a surety......, the offers were incomplete and would have been properly overruled, if objected to, because there was no offer to prove there accompanied the request an explicit declaration that defendant would otherwise hold himself discharged": Erie Bank v. Gibson, et al., 1 Watts 143; Fidler v. Hershey, 90 Pa. 363; Act of 1874, infra.

The Act of May 14, 1874, P. L. 157, particularly provides that sureties shall not be discharged from liability by reason of notice to the creditor to collect the amount

of the debt from the principal, "unless such notice shall be in writing and signed by the party giving the same"; furthermore, the rule laid down in our books is that a notification to proceed against the principal debtor must be accompanied by "a positive, explicit declaration that unless the request be complied with the surety will be considered discharged," and the cases state that this is necessary in order "to put the creditor on his guard": Erie Bank v. Gibson, et al., 1 Watts 143, 146-7; see also Strickler v. Burkholder, 47 Pa. 476, 479, and Fidler v. Hershey, 90 Pa. 363, 366. In the present case, assuming, but not deciding, that the defendant was only secondarily liable, the testimony tendered to prove the request, or notification, to proceed against Mr. Gitt, was properly rejected; the notice therein contended for was not in writing, nor was it accompanied by any such declaration as called for by our decisions, and, since the jury have found there was no binding agreement to postpone execution, there is nothing in the record to support the appellant's contention that, under the circumstances at bar, the requirements of the law as to such notices ought to have been treated as waived. The third, fourth and sixth assignments are all overruled.

The judgment is affirmed.