## Bell, Secretary of Banking, Appellant, v. Anderson et al.

Argued December 9, 1940.

Before KELLER, P. J.,

Cunningham, Baldrige, Stadtfeld, Parker, Rhodes and Hirt, JJ.

*John V. Diggins,* with him *John W. Lord, Jr.,* Special Deputy Attorney General, *Orville Brown,* Deputy Attorney General, and *Claude T. Reno,* Attorney General, for appellant.

*E. Wallace Chadwick,* of *Chadwick, Weeks & Curran,* with him *Frank I. Ginsburg,* for appellee.

Opinion by Keller, P. J., January 30, 1941:

This was an action of assumpsit brought by the holder of a negotiable promissory note against the maker and the indorser, under the Act of May 25, 1933, P. L. 1057, 12 PS §151. Their joinder as defendants in one action did not affect their several rights. Anderson, the maker of the note, made no defense and judgment was entered against him for want of an affidavit of defense; and the case proceeded to trial against the indorser, Bond.

In order to hold the indorser liable it was necessary for the plaintiff to allege (*Link v. Bergdoll,* 35 Pa. Superior Ct. 155) and prove that the note was presented for payment at its maturity, according to its tenor, that it was not paid, and that notice of nonpayment was given the indorser within the time fixed by the Negoti-

able Instruments Law of May 16, 1901, P. L. 194, sections 103 to 108.

On the trial the court directed a verdict for the plaintiff. Rules were granted on motion of the indorser defendant (1) for a new trial and (2) to show cause why judgment should not be entered in his favor non obstante veredicto, the latter of which the court in banc, three judges concurring, made absolute. The specially presiding trial judge dissented. Plaintiff appealed. The judgment will be affirmed.

The case must turn on the question of notice to the indorser of the nonpayment of the note. The directed verdict in favor of the plaintiff, in any event, cannot stand in the light of the evidence in the case, for even if the plaintiff had produced substantial competent evidence of the giving of such notice to the indorser, it was so weakened by the testimony of the notary himself and by the evidence of the defendant in denial, that it did not warrant binding instructions for the plaintiff; but a careful review of the whole record satisfies us that the plaintiff did not sustain the burden imposed on it of proving that notice of nonpayment in accordance with the Negotiable Instruments Law was given the indorser, and that judgment non obstante veredicto in the latter's favor was rightly entered.

In the first place proof of notice of nonpayment could not be made by offering the several paragraphs of the statement and affidavit of defense, for the plaintiff's statement contained no averment that notice of the nonpayment of the note was duly given the indorser. The eighth averment in the statement, "In giving the defendants notice of dishonor and nonpayment by the maker, the plaintiff was obliged to and did pay the sum of $2.20 as costs," is not a clear and definite averment that notice of dishonor and nonpayment of the note by the maker was given on a certain date, pursuant to the statute, but only an averment that plaintiff was

obliged to pay $2.20 as costs, which the last paragraph identified as costs of protest. The certificate of protest was not declared on nor attached to the statement. As pointed out by President Judge FRONEFIELD in his concurring opinion, the Supreme Court has ruled in the cases of *Chestnut Street National Bank v. Ellis,* 161 Pa. 241, 28 A. 1082, and *Peale v. Addicks,* 174 Pa. 543, 34 A. 201, that similar indefinite and merely suggestive allegations were not sufficient averments of fact to sustain a judgment for want of a sufficient affidavit of defense. In the former case the bank, the holder, sued the indorser of a promissory note and in the statement of claim declared on the note,—which was set out in full with the indorsements—and averred "that the above amount, to wit, two thousand five hundred dollars, with interest and costs of protest as stated [$2.05], is justly due and payable to the plaintiff from and by the defendant." The defendant, in his affidavit of defense, averred, inter alia, "that no notice of protest was given him by plaintiffs or their agent of the nonpayment of said note at the time of its maturity, nor did he receive any notice at the time of said maturity of its nonpayment, although a resident of the City of Philadelphia, having an office within seven or eight squares of said Chestnut Street Bank, to wit, at No. 1414 South Penn Square in the city aforesaid." The Supreme Court in reversing judgment for want of a sufficient affidavit of defense, said (p. 244) : "The liability of the drawer or indorser of a bill of exchange or the indorser of a promissory note is only secondary. It depends on due presentation to the maker, demand of payment at the proper time and place, and notice of dishonor. These are necessary conditions or ingredients of an indorser's absolute liability, unless waived by him; and a distinct averment of one or the other is essential to a good statement of 'demand' under the act. The statement in this case contains neither. True, it speaks of 'costs of pro-

test two dollars and five cents', from which it might be inferred that the note in suit was protested for non-payment; but when or how it was protested, whether at maturity or on the eve of bringing suit, etc., we are not informed. Averments that are essential to a complete, self-sustaining statement of demand must be so clear, distinct and positive that resort to anything like mere inference will be unnecessary."

In *Peale v. Addicks,* supra, another action against the indorser of a promissory note, the plaintiff's statement averred, inter alia, "Said note was duly protested for nonpayment, the costs of protest being $1.64", and the plaintiff claimed the face of the note and costs of protest and interest from the date of maturity. In his affidavit of defense the defendant said nothing about not having received notice of nonpayment, but the Supreme Court reversed the judgment entered for want of a sufficient affidavit of defense, saying in part: "It follows, therefore, that in an action against an indorser, the plaintiff's statement under the act of 1887 must contain averments of presentation, demand, notice, etc., necessary to fix the indorser. In the case at bar, the statement contains no such averments. The nearest approach thereto is the following clause, referring to the note in suit: 'Said note was duly protested for nonpayment, the costs of protest being $1.64.' This averment is a conclusion of law rather than a statement of facts from which the conclusion may be legitimately drawn. It is, however, a conclusion not predicated—in part even—of notice to the defendant of the dishonor of the note. For aught that is averred the note may have been duly protested, and yet defendant, as indorser thereof, may not have been notified of the demand and the maker's refusal to pay, etc. In no proper sense is it the legal equivalent of a sufficient averment of presentation and demand, at maturity, and notice of nonpayment. In brief, the statement does not present such facts as, if

found to be true, would entitle the plaintiff to a verdict."

We recognize that it is not necessary that a promissory note or domestic bill of exchange be protested: *Wisner v. First Natl. Bank of Gallitzin,* 220 Pa. 21, 68 A. 955. Protest is only required as to foreign bills of exchange: Negotiable Instruments Law, sec. 118;— the states of the union being foreign as to each other, however. But protest is a recognized method of giving notice of dishonor or nonpayment, and, therefore, though not required, if, in the Peale-Addicks case there had been a sufficient averment of protest following the dishonor of the note, it would have been sufficient notice of nonpayment. The extract above-cited shows that the Supreme Court did not consider that the averment, which was a more definite averment than in the present case, was a sufficient notice of nonpayment to hold the indorser liable.

Over the objection of the defendant, the court admitted the note in evidence. Had it been excluded, the plaintiff might have moved to amend his statement by averring that notice of protest was given the defendant and by attaching the certificate of protest.

In order to prove that notice of nonpayment was given defendant, the plaintiff called Harry H. Bardsley, the notary, as its witness. He produced the certificate of protest, or 'manifest' as he called it, and at first testified generally that notice had been sent by mail to the maker, indorser and the bank; but on further examination, he admitted that the notices were not sent out by him personally, but by one of the young ladies who worked in his office, and she was not called to testify. Furthermore, he did not know where the notice to the indorser, this defendant, was sent. Section 108 of the Negotiable Instruments Law provides as follows: "Where a party has added an address to his signature, notice of dishonor must be sent to that address, but

if he has not given such address, then the notice must be sent as follows:

"(1) Either to the postoffice nearest to his place of residence, or to the postoffice where he is accustomed to receive his letters; or

"(2) If he live in one place, and have his place of business in another, notice may be sent to either place; or

"(3) If he is sojourning in another place, notice may be sent to the place where he is sojourning.

"But where the notice is actually received by the party within the time specified in this act, it will be sufficient, though not sent in accordance with the requirements of this section."

The notary was not able to say where it was sent for he did not send it; and the certificate or manifest was wholly silent on the matter.

Furthermore, the language of the certificate is peculiar and unusual. After certifying to the presentation of the note at the bank where it was payable, during the usual business hours, demand and refusal of payment—none of which, he testified, on the trial, *he had actually done*—the 'manifest' continued: "Whereupon I, the said Notary, at the request aforesaid, Have Protested and do hereby solemnly Protest against all persons and every party concerned therein, whether as Makers, Drawers, Drawee, Acceptor, Payer, Endorser, Guarantee, Surety, or otherwise howsoever against whom it is proper to protest, for all Exchange, Re-Exchange, Costs, Damages and Interest, suffered or to be suffered for want of Payment thereof:—of which demand and refusal I *duly notify* the maker and endorsers thereof by mail."

This was not a certificate *that he had notified* the indorser, as required by law in order to hold him liable; it is in the present tense—"I duly notify"—and signifies an intention to notify in the future, or by the certificate itself, rather than the record of an accomplished fact—

something to be done by him, rather than a certificate of what he had done in the matter.

These facts are wholly different from those in the case of *Scott v. Brown,* 240 Pa. 328, 87 A. 431. In that case the facts were stated by the court as follows: "At the trial of an action by the holder of a promissory note against an endorser the plaintiff offered the note in evidence together with the certificate of the notary by whom protest had been made. It appeared from the certificate that the notary had presented the note at the bank where it was payable on the day that it was due and demanded payment thereof which was refused, that he had protested it and *notified the maker and endorsers of the presentation, demand and refusal.* This was followed by proof by the notary that after protesting the note, he handed it to his clerk with instructions to mail notices which he furnished for the purpose to all parties to the note, to such addresses as he had obtained or had the means of obtaining. And *by further proof by the notary's clerk* that he had within an hour of the dishonor of the note *mailed notice of the presentation, demand and dishonor of the note to the defendant at Fallsington,* Bucks Co., Pa., with notice that he would be looked to for payment. *The defendant offered no testimony,* but presented a request for binding instructions, which was refused, and after verdict he moved for judgment non obstante veredicto on the ground that there was no proof that Fallsington was the postoffice to which notice should have been sent under the Negotiable Instruments Act of May 16, 1901, P. L. 194." The opinion then continued: "The plaintiff could have gone to the jury on his offers of the note and the notary's certificate of protest without further proof and the single question raised by the appeal is whether having shown by his witnesses that the notice was mailed to Fallsington, he was required to go further and prove that this was the proper postoffice to which to mail

it under the Act of 1901. The Act of January 2, 1815, 6 Smith's Laws 238, which made the certificate of a notary evidence of the facts therein contained was extended by the Act of December 14, 1854, P. L. (1855) 724, so as to include notice to drawers, acceptors and endorsers in respect to the dishonor of bills and promissory notes. It has been uniformly held in our cases that the certificate of a notary of notice of protest is prima facie evidence of the *facts* stated therein and that *in the absence of contradictory proof it is conclusive.* In *Kase v. Getchell,* 21 Pa. 503, it was said that notice to an endorser is part of the official duty of a notary and when duly certified and *not contradicted or questioned,* the presumption that always arises in favor of official acts requires us to hold that it was given according to law, and in *Starr v. Sanford,* 45 Pa. 193, that the Act of 1854 makes such a certificate *prima facie evidence* and *unless rebutted* it must have a conclusive effect." The parts which we have italicized distinguish that case from this one.

(1) The certificate of the notary in the present case did not contain an averment that he *had notified* the indorser of the nonpayment of the note.

(2) The notary's clerk did not testify that she had mailed a notice of protest or dishonor to the indorser.

(3) The certificate did not set forth the address of the indorser and the notary testified that he did not know to what address notice was mailed by his clerk.

(4) The defendant in this case did testify and denied that any notice of protest or dishonor had been received by him.

(5) The *facts* contained in the certificate of protest were not of themselves sufficient to show that any notice of protest or dishonor had been sent to the indorser, or received by him, within the time fixed in the statute.

(6) And the testimony of the notary, so far from supplying the defects in the certificate of protest only

established that the notary had no personal knowledge on the subject and his want of knowledge was not supplied by any other witness.

Both the Act of 1815 and the Act of 1854 referred to in the opinion in *Scott v. Brown* provide that the notary's certificate shall be read and received in all suits in evidence of the *facts* therein certified; not of *facts* not certified but attempted to be inferred from those facts. And they contemplate and intend that what the notary certifies to shall have been *done by him*. And both acts expressly grant permission to any party in said suit to contradict, by other evidence, any such certificate.

Our Supreme Court has held that where the notary's certificate of protest, though not required, contains facts showing that the notary presented the note at maturity at the place where it was made payable and demanded payment, which was refused, and that the notary thereupon notified the indorser personally, or by mail to a named address, of such presentation, demand and nonpayment, the prima facie evidence thus presented is not overcome by a mere denial on the part of the indorser that he received such notice by mail. See the detailed facts set forth in the notary's certificate of protest in *First Nat. Bank of Hanover v. Delone,* 254 Pa. 409, pp. 411, 412, 98 A. 1042, as compared with the paucity of facts contained in the certificate in the present case; and even in that case, the court left the matter to the jury with the instructions that the notary's statements in his certificate constituted a case for the plaintiff, which the law considers conclusive as against the defendant unless some intervening defense is made which will exonerate the defendant, but the credibility of the witnesses was for them—there being no real attempt to impeach either the notary's certificate or the oral testimony in support of it. See also *DeCoster v. Brown,* 129 Pa. Superior Ct. 283, 284-5, 195 A. 636,

for a recital of sufficient facts respecting notice of dishonor to make out a case against an indorser. In *Zollner v. Moffitt*, 222 Pa. 644, the notary merely testified that she had no recollection apart from the certificate of sending notice of protest or dishonor to the defendant indorser and it was held that this testimony did not deny or contradict the prima facie evidence of the certificate of protest. In the present case the notary testified that *he did not send* such a notice, that one of his clerks attended to it, and she was not called to testify.

The certificate of protest in the present case was very like the certificate or manifest in *Harr, Secy. of Banking v. Edsall*, 121 Pa. Superior Ct. 19, 183 A. 67, in that it used the same form (pp. 20, 21), "of which demand and refusal I duly *notify* the maker and endorsers", but was not as specific or definite as in that case, for in that certificate the endorsers notified were named, but their respective addresses were not given. We sustained the entry of judgment non obstante veredicto in favor of the defendant in that case, holding, inter alia, by PARKER, J. (p. 22) that where the notary does not certify that he *notified* the indorser, but only that his official protest is a notification, there is no presumption to go to the jury that such notice of dishonor as is required by law to hold him liable was sent to the indorser. While the decision in that case turned mainly on another point, whether notice had been sent to the indorser at his *proper address,* it is relevant here, for if the certificate had set forth sufficient facts to show that notice of dishonor had been given the indorser, judgment non obstante veredicto in his favor could not have been entered.

We are therefore of opinion that the plaintiff failed to make out a prima facie case showing that notice of the dishonor of the note, in accordance with the statute, had been sent to the defendant indorser; that the cer-

tificate of protest did not contain *facts* sufficient to sustain a finding that such notice had been sent him, and the notary's testimony in court not only failed to show the giving of such notice, but it contradicted any inference of notice to the indorser which the plaintiff sought to draw from the certificate, and established that the notary had not personally sent such a notice, and the clerk whom he had deputed to send it was not called and did not testify that she had done so. The testimony of plaintiff's own witness therefore effectually contradicted any assumption from the certificate that the notary had given notice of dishonor to the defendant. And both the notary and his certificate failed to show to what address any notice of protest to the indorser given by him to his clerk to mail had been sent, if sent it was.

In this view of the case it is not necessary to discuss the interesting question raised by President Judge FRONEFIELD in his concurring opinion.

Judgment affirmed.